is not here today. She continues to be under the weather, but she has prepared and is participating in the decision and she will be listening to the briefs and with that you may proceed. May it please the court. Good morning, your honors, counsel. My name is Brian Cohut. I'm an assistant appellate defender with the office of the state appellate defender and I represent Ms. Gina Gonzalez, the defendant in this criminal case. Following a jury trial Ms. Gonzalez was found guilty of first degree murder and sentenced to 50 years in prison. On appeal she raises three issues before this court. Today I would like to talk about the first two issues, whether other crimes evidence was erroneously admitted and whether statements of the deceased were erroneously admitted. I will entertain any questions that this court may have regarding the third issue, which is a post-trial plan with an effective assistance counsel. Turning to the first issue, your honors, Gina Gonzalez's mother, Hughyn Fong, died as a result of blunt force trauma. The evidence showed that there was no impact wounds from the butt of a gun or from a baseball bat. Nevertheless, the court allowed evidence showing that the police found an arsenal of weapons in Ms. Gonzalez's house and in her car, including an assault rifle with high-capacity magazines, six loaded semi-automatic handguns, several additional loaded magazines, and additional ammunition along with three baseball bats. The state also asked the testifying officer to specifically describe each of the firearms because, according to the prosecutor, some of us don't know anything about guns. In response, the officer testified that the semi-automatic weapon could load and fire faster than other guns and that the loaded magazines allowed the shooter to shoot more bullets. Who was the prosecutor? This Tazewell County case, I believe it was Evers. Was it Stu Umholtz? Well, yeah, he was the state's attorney at the time, yes. But I'm just wondering who was actually appearing as the state's attorney prosecuting this. I believe it was Mr. Umholtz. I'm not positive, however. It's always interesting for the court to know who these people are that are saying these things. The police officer also said that he found a shoulder holster in defendant's trunk, and based on the prosecutor's question, the officer testified that a shoulder holster would more easily conceal a handgun firearm. Later, the prosecutor elicited testimony from a different officer indicating that a FOID card, Firearm Owner's Identification Card, was required in the state of Illinois and that Ms. Gonzalez' FOID card had been revoked, showing that she possessed all these guns and ammunition illegally. This was not a gun case. This was a case that involved a domestic quarrel where weapons were not even involved. The state all but concedes that this arsenal was not relevant to the cause of death. Yet, even though this was not a gun case, the evidence related to these weapons permeated the entire trial. This evidence solely served to portray Ms. Gonzalez in a negative light and as a bad person deserving of punishment. Only because she does not have a valid FOID card. Well, because she possesses all these firearms, this isn't an arsenal as the state put it. This is the type of evidence that you would see in a mass shooting case, not in something that involves... Well, it's certainly not illegal to have guns and miniguns. It's not illegal to have an arsenal. It's not illegal, but it's... There's two levels, Your Honor. It would be potentially bad acts evidence just to possess the firearms in this fogging, this many firearms. It's not necessarily illegal. Wait, really? How is that bad acts? Because it's irrelevant in this case. Well, that may be, but I have a problem saying that possession of firearms in any quantity is bad acts. A second amendment, I think the constitution would suggest otherwise. Now, it may be illegal in the state of Illinois because you don't have a valid FOID card. That may be the argument. That is... But you are required to have a FOID card. Certainly, Your Honor. And because the testimony was elicited showing that she did not have a... Well, and that's where I guess I wanted to try to suggest that that might be the one item that could be arguably... She was breaking the law. She possessed these firearms illegally. Exactly. If that is the case, that is true. Yes. But the quantum, per se, is not itself. The quantum, it's irrelevant in this case. And then the quantum is overly prejudicial where there's no appropriate value here because it was not the cause of death. Now, the state comes back and argues that this evidence was necessary to bolster the testimony of one of its witnesses. And in that context, maybe its illegality certainly is necessary to a determination of that. It's a sub-issue, essentially, of what the overall issue is. And as I said, the state argues that this evidence was necessary to corroborate the testimony of Brandy Buzik, who said that Fon brought a whole bunch of guns over to her house. But people can be remembered. The Illinois Supreme Court said that, well, you cannot introduce evidence of criminal acts, which is precisely what this is, to bolster the credibility of one of its witnesses. There were other things recovered, too, in addition to the guns and ammunition. You mentioned some big swords and knives and other things, too, that they talked about taking. Sure. They were referenced in testimony in the trial. Baseball bats were also recovered. And there was testimony indicating that Ms. Gonzalez used to throw knives in the backyard and used to practice with samurai swords in the backyard. And ninja stars. Yes, but that evidence was not recovered, per se. But it was brought in and shown before the jury. And so the evidence of this criminal activity permeated the proceedings and powerfully portrayed the defendant as a bad person deserving punishment. It was inadmissible, and therefore Ms. Gonzalez respectfully requests that this court grant her a new trial on that first issue. Turning now to the second issue, the circuit court allowed the state to introduce statements Fon made to Brandy Music indicating that the defendant had bruised her, had scratched her chest, and that Fon was afraid of the defendant because she thought that Ms. Gonzalez might kill her. This was brought in under Section 115-10.2a of the Code of Criminal Procedure that allows for the admission of hearsay statements in domestic violence prosecutions where the witness is unable to be present or to testify at the hearing because of health or then existing physical or mental infirmity. But the appropriate statutory hearsay exception to allow the admissibility of these statements is found in Section 115-10.4, which deals with deceased witnesses. And that's what we have in this case. We have the admission of a statement made by a deceased witness. And both sections require that the statement can only be admissible if it is not specifically covered by any other hearsay exception. Here, 10.4 is the specific hearsay exception because it deals with the deceased witness, not 10-2.a. 10.2a. The state argues that 115-10.2a is a more specific hearsay exception because this is a domestic violence prosecution. But these are all hearsay exceptions that deal with an out-of-court witness. The most important consideration is the reason why the witness isn't available in the first place. So that's what specifically the court should look at to determine which is the more specific statute. Here, of course, the witness was deceased, so 10.4 is the applicable statutory hearsay exception. 10.4 requires prior opportunity for cross-examination. Therefore, the statement was inadmissible under that section. In any event, Rule 84 of the Illinois Rules of Evidence preempted Section 10.2a. Both of them deal with the admissibility of unavailable witnesses where the decorant is unable to be present for health reasons. But 804 requires a prior opportunity for cross-examination where the statutory subsection does not. Therefore, the two are in conflict. The state argues that there is no conflict because Rule 101 of the Rules of Evidence says that there is no conflict between the statutory sections and the Rules of Evidence. But it just simply ignores the facial conflict that exists between these two provisions. One of them requires prior opportunity for cross-examination and the other one does not. Which one does not, the Rule? The statutory subsection. Statutory subsection. Yes, the Rule requires prior opportunity for cross-examination where the statutory subsection does not. And since the Illinois Supreme Court rules govern over the statutory subsections, then it was required that Ms. Gonzalez had a prior opportunity for cross-examination. And when was the Rule promulgated versus the statutory subsection? January 1, 2011 on the Rule. Statutory subsection was, I believe it was 2004. It's either 2002 or 2004. Which would suggest a corrective. That's entirely accurate. Either that or the more specific statutory hearsay exception in this case is 10.4. And so 10.2a arguably might not even apply in this instance. But Rule 804 also speaks to deceased decorants, and it requires a prior opportunity for cross-examination. So something needs to be done with 10.2a, but I don't know precisely what it is. In our district, the Clery case and then Richter, which is a Fourth District case, they both said that this type of a first-degree murder case is a domestic violence prosecution and didn't require, you know, they didn't have the discussion, I guess, about unavailability, but they found that 10.2a applies, correct? I mean, they said that this is the statute that would apply in this type of a prosecution. And those are pretty recent cases. So the unavailability includes this type of a circumstance, and if you reach into the health needs, the ultimate reason, ultimate health reason for being unavailable is having been killed or being deceased. So are you saying then that where in any prosecution where someone is deceased that you have to seek it under 10.4? Well, Clery and Richter, they never addressed this specific argument. Both Clery and Richter, they discussed the confrontation clause. That was one part of the argument, and the other question was whether a murder prosecution does constitute a domestic violence prosecution. Those are the two issues in Clery and Richter. Here it's a question of which is the appropriate statutory subsection. That issue is never addressed in either of those cases. It was never brought up. So this is a different issue than the issues that were decided in those cases. And then to answer your follow-up question, which, yes, conceivably, in a broad reading of 10.2a, that unable to be present because of health reasons could apply to because the witness is deceased. But the statutory subsection says it only comes in under this subsection if there is no other specific subsection applicable. And in this case, 10.4 is specifically applicable because the witness is deceased. Therefore, 10.4 should apply rather than 10.2a. Well, the ultimate bad health is death. That's what I think they're saying in the Fourth District, right? And I would have to agree with that. I couldn't argue against that. But you're saying that the condition of the declarant is clearly deceased, not bad health. That's Ms. Gonzales' argument. That's the difference between these two subsections, and that's what makes 10.4 more specific than 10.2a because 10.4 is specific. It only applies for the declarant as deceased. 10.2a has a number of different reasons for unavailability. So 10.4a is the applicable subsection in this case. In any event, Rule 804 preempted 10.2a anyway. Which did have prior examination requirements. Which does require prior opportunity for cross-examination. And that's the fundamental difference between 804 and 10.2a, because there's a stricter criteria for admission under 804. That's two minutes. Thank you. And if there are no further questions, Your Honors, for these reasons, Ms. Gonzales respectfully requests that this Court reverse her conviction and remain in this class for a new trial. I do have one question. Do you think, I mean, okay, were these errors preserved? The first one was. The first certainly was. Yes. The second one, well, I'm not, it was appropriately preserved. It was brought before the Circuit Court. It was the State's motion in limine that sought to admit these statements. Okay. And therefore, it's the State's burden to convince the trial court that these statements come in under 10.2a. The defendant, Ms. Gonzales, in this case, did not specifically articulate the issues that she's raising here. However, she did argue against the motion in limine. She contemporaneously objected at the time the evidence was brought in the trial, and she filed a motion for a new trial that argued that these statements were inappropriately brought in under Section 10.2a. Okay. But what's our analytic framework that we must go through? If this Court agrees that this issue is properly preserved, then it's a question of whether it's a harmless error. And if it disagrees and, you know, finds that it was forfeited, then it's a question of whether it's a plain error. And in her reply brief, she argues that it's a plain error as well. So under either one, this Court can review. It's not a harmless error, Your Honor. What we have in this case, Ms. Gonzales testified. She said that her mother came at her with a chair. Her father had a prior conviction for aggravated battery, which came in under Lynch evidence because his self-defense was raised. The jury was instructed on self-defense as well as second-degree murder, unreasonable belief in self-defense, and mutual combat, and it was given an involuntary manslaughter instruction. So the question is not simply the defendant's culpability in this matter, but her degree of culpability. And bringing in this evidence, all this gun evidence, and or these statements were fine as saying, I'm afraid of my daughter, she's crazy, she beats me up, would sway any rational jury to go from, even if they thought that this was recklessness, they would believe that she was going to do this sometime or another anyway. She was a bad person deserving punishment. Okay. Thank you. Mr. Nicolosi. Thank you. Good morning, Your Honors. May it please the Court, Counsel. Starting with issue one, Your Honors, I think it's important to note that the standard of review in this evidentiary issue is whether the trial judge did or did not abuse his discretion. People submit that he did not. Why? I'll get to that, Your Honors. I just think it's important to note that there's a very deferential standard of review for the judge's decision here, and the people would submit just as they argued below at the hearing on defendant's motion to exclude the weapons evidence, that this was admissible to corroborate the testimony of Brandy Buzik. Quite simply, this is very relevant evidence in this case. Of course, we're talking about a murder case where the victim did some action towards this neighbor in the effect of bringing these guns that the defendant had over to the neighbor. Boy, I just lost my train of thought. That was terrible. So anyway, yeah. This is when she came back to get them, right? Sure. Where the conversation took place? Yeah, these conversations took place, of course, that the victim told Buzik that she was afraid of the defendant, that the defendant threatened to kill her, that the defendant was crazy. And, of course, those reasons, the fear that the victim had for the defendant, those are the reasons that the victim brought these guns to Buzik in the first place. And Buzik, of course, would testify to all of said things. And the fact that these guns existed as the officers confiscated them and pictures of them and the weapons themselves, this is all relevant to corroborate Buzik's testimony that, yes, the victim was afraid of these guns right here. That's why she brought them over. And the fact that the defendant brought them back the next day, that established even more the reasons why the victim was afraid of this defendant. This wasn't a shooting or a gun-involved death, was it? No, it was not, Your Honor. I mean, what did you really have here in your prosecution? I mean, you had an expert, right? You had the story of the defendant. Sure. And you had a medical expert. Sure. And said that what? Well, the medical expert said that this was blunt force trauma and this death was not caused by a simple fault. Correct. And the defendant basically argued that we got in a physical altercation. The people submit that that's a pretty significant admission there that the defendant made that there was actually a physical altercation. But not significant enough for your prosecution that you had to go into all this other stuff that's at issue now, right? Well, the altercation was significant. I mean, the defendant admitted that she tried to get it. I'm suggesting that the guns, the hearsay, why is it in this prosecution? To corroborate the neighbor. To corroborate the neighbor's testimony. One would suggest you had enough there with the medical expert and the stories to proceed to a prosecution that could result in a conviction. Sure. Absolutely, Your Honor. And that would lead right into a harmless error argument that there was enough besides these guns to lead to a conviction. So we have all these other issues here. I mean, I think the defense is suggesting this is cumulative error stuff that's just brought in by the state here all the time. Well, Your Honor, I think as you just admitted there, if... I didn't admit anything. You suggested that there was enough evidence to begin with aside from these guns to lead to a conviction. So what's the harm here? If the medical evidence and the defendant's incredible testimony, if that was significant on its own to lead to a conviction, then where's the harm from admitting evidence of these guns? Well, we get into the cumulative analysis of error. Sure, but... Sure, that's what I'm suggesting. Okay. Well, Your Honor, the people would submit that, guns aside, let's say this court deems it error to have admitted evidence of these weapons, that it was harmless because it didn't contribute to the verdict because, again, as I just stated, that the defendant admitted a very serious altercation happened with her mother. And the reason that we can conclude it was serious, number one, it led to her death. Number two, the defendant offered to take the victim to the hospital. So obviously the defendant knew this was a very serious altercation. And importantly, the medical evidence all established that these injuries could not have been sustained from just a simple fall. More specifically, there were two separate areas of trauma to the brain. And, of course, the testimony was that that could not happen from one simple fall. And importantly, on that same note, one doctor testified that the victim almost certainly had no lucid interval following these injuries. Another doctor testified there could have been a very short lucid interval. And that completely contradicts the story the defendant testified to and told officers. She said that the victim was lucid and talking right after their physical altercation and that the victim did not want to go to the hospital. And later testified she went to pay a ticket in Tazewell County, came back, and then went to Milwaukee, and that the mother walked her out and locked the door behind her. The medical testimony disputes all of that. It completely contradicts all of that testimony. So the conclusion I'm getting to there is that the defendant didn't have any credibility. Her story didn't make any sense in light of the medical testimony. And, of course, aside from the physical weapons, we still have brain abuse as testimony. You can still consider lots of it regardless of the weapons themselves. She testified of a prior incident where the defendant hit the victim in the yard and that music observed this and that the defendant hit the victim so hard that she lost her balance. And there was also another incident testified to by Mom Lee. I believe that was the victim's cousin. I may be wrong on that. But he testified there was another story about the defendant being physical at Christmas with the victim pushing her down. So the people would submit that aside from the evidence of the weapons themselves, there was quite a bit of evidence pointing to the defendant's guilt, and that was strong evidence, and that if this court deems that their error was committed, then any error was harmless. In regarding the admissibility of the neighbors of the hearsay testimony, I know that you've argued that it's been waived. In my brief I did, yes, Your Honor. And I guess my question, I mean, they raised, they objected to the admission of this in the motion in the name and then made contemporary objections in follow-up and post-trial. But are you just saying that because they didn't use the argument that it's been trumped by Rule 804, that precludes them? Otherwise they have just gone, it wasn't the admission of the conversation wasn't? That's what they're appealing regardless of how we get there? Because I think there is a pretty strong argument to say that it might not have been the correct section. But you think that their objection would have to have been specific and very detailed? Absolutely, Your Honor. I think the issue that they raised and preserved below is considerably different than the issue you have here. The issue they raised below is that these statements shouldn't be admitted under 10.2a. So it was more about the substantive merit of these facts and these statements and how they fall under 10.2a. That's not the issue we have here. The issue we have here is the defendant arguing 10.2a doesn't exist at all. It doesn't apply here at all. That you need to either consider that 804 or 10.4 are more applicable. Of course, defendants argue neither of those apply when you apply the facts to them. But the people are arguing in a brief, and I'm arguing right now, that these are just distinct issues. One is whether or not the statute is applicable at all and the other is whether or not the facts qualify under that. I think there are two distinct issues, and quite simply the defendant did not raise the issue that we're here arguing today as such that those issues aren't forfeited. Nevertheless, of course, the people will argue, if this Court considers them preserved, that first and foremost, 10.2a is not preempted by 804 and people point to the committee comments in the Illinois Rules of Evidence which specifically say, and I quote, there is no current statutory rule of evidence that is in conflict with a rule contained in the Illinois Rules of Evidence, end quote. I think there we have it. The committee tells us there's no conflict, so I don't understand how 10.2a can be preempted by a rule created by this committee when the committee is telling us that there's no conflict. And of course, the committee did mention there was a conflict between other rules and statutes, not relevant here, Rule 609D and Section 5-150, Subsection 1c. The committee acknowledged, hey, we see a conflict between these two. But of course, if they mentioned there's a conflict there, they certainly could have mentioned that there's a conflict here, and they didn't. And Justice Holder, you mentioned during counsel's argument that because the rule was in 2011 and 10.2a was in 2004, that it kind of maybe looks like this is a corrective measure. But the people would argue that if it was a corrective measure, I think the committee would have mentioned it, just like they mentioned it in 609D, the comment referring to that. So the people would say that this is not corrective, and 804 doesn't preempt 10.2a. And part of the reason is, and I'll get more into the reason why I don't think there would be a conflict, even if we're going to ignore the committee's comments, which I don't think, of course, we should do. I think 10.2a is a very specific statute. Whereas 804, Rule of Evidence 804 and Section 10.4, I don't believe those are specific statutes at all, or specific provisions at all. Because 10.2a specifically deals with domestic violence prosecutions. And that's the reason, moving on to the difference between 10.2a and why that's still applicable despite the existence of 10.4. That's the reason. And if we're getting into a discussion of which statute is more specific, the people would submit, just as I did in my brief, that 10.2a is more specific. It deals with one specific area of crimes, one area of the law. And whereas 10.4 deals with all deceased declarants. It deals with all cases, all types of crimes. And clearly, if we're going to nitpick to the degree that I think we need to nitpick, if we go to 10.2a, we're talking about one possibility for why a declarant can be unavailable that satisfies 10.2a is of being of poor health. And of course, as was discussed during counsel's argument, there is no worse type of health than death. Thank you very much. So 10.2a certainly qualifies under that part. And the people would just overall submit that because this 10.2a specifically deals with domestic violence prosecutions, it was applicable here. And the people would point to, again, the cases of Richter from 2012 and Cleary from this court in 2013. Those cases dealt with statements from a deceased declarant, and both were admitted under 10.2a. Of course, those cases didn't acknowledge or didn't discuss the rules in depth like we are now. But that's certainly strong evidence. And because those are both recent cases that had 10.2a, 10.4, and 804 all existed at the time these cases were discussed or decided, that's still strong evidence, despite the lack of analysis, that 10.2a is the proper statute governing this issue. And just as counsel stated, if there are any questions on Issue 3, I'd be happy to answer those. And of course, in addition to questions on Issue 1 or 2, if there are any, I'd be happy to answer them. I think so. Thank you, Mr. Nicolosi. Mr. Kohut for rebuttal. Your Honors, in regards to harmlessness, I'd just like to point out that it's the State's burden to prove that the error was harmless beyond a reasonable doubt. Here we have different degrees of culpability. The jury was instructed, as I stated previously, on a second-degree murder, self-defense, as well as involuntary manslaughter, even simple battery. So the State, simply just based on this evidence here, cannot show that it's harmless. Turning just briefly to the second issue, the State argues before this Court today that there is no conflict between Rule 804 and 10.2a, or they don't cover the exact same topics, I think was the State's argument here, but they include the exact same language. This is 10.2a. Unavailability as a witness includes circumstances in which the declarant is unable to be present or to testify at the hearing because of health or then existing physical or mental illness or infirmity. Rule 804, definition of unavailability, unavailability of a witness includes situations in which the declarant is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity. They're both, they cover the exact same topics here. But 804 requires prior opportunity for cross-examination. And the State, as it did in its briefs and today again, states that there is no conflict between 804 and 10.2a because the Committee says that there's no conflict between these two provisions. But the Committee comments are not binding, and this Court needs to look no further than Justice Holterich's opinion and People v. Peterson where this Court found that there was a conflict between the Illinois Rules of Evidence, the forfeiture by wrongdoing, and the statutory hearsay exception dealing with forfeiture by wrongdoing. And if there are no further questions or comments, thank you very much. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible.